BRUNHILD TOWERS, INC. a/k/a Murray Hill Drive Apartments, Plaintiff-Appellee, *v.* HARRY F. CHADDICK, *et al.*, Defendants-Appellants.

(No. 54310;

First District—September 15, 1971.

*Rehearing denied October 13, 1971.*

Richard L. Curry, Corporation Counsel of the City of Chicago, (Marvin E. Aspen, Edmund Hatfield and Harvey N. Levin, Assistant Corporation Counsel, of counsel,) of Chicago, for appellants.

Levin & Novoselsky, for appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The plaintiff, Brunhild Towers, Inc., instituted this action under the Administrative Review Act to set aside an order and decision made by the Zoning Administrator of the City of Chicago and affirmed in a resolution of the Zoning Board of Appeals which directed the corporation to discontinue the use of a 40-car open air parking lot because the lot did not conform with the surfacing requirements of the Chicago Zoning Ordinance. The circuit court, after considering the complaint, the answer thereto, which consisted of the entire record of proceedings before the Zoning Board of Appeals, and the argument of counsel, reversed. The zoning administrator, the members of the zoning board of appeals, and the City of Chicago appeal.

The plaintiff is the owner of real estate located on the west side of Marine Drive between Montrose Avenue on the north and Junior Terrace on the south in Chicago, Illinois. A 17-story apartment building which contains 92 apartments and which has parking facilities for about 80 automobiles, is located on the southern portion of the property; and an open air parking lot with a capacity of storing about 40 cars is located next to the apartment building on the northern part of the property. The parking lot, which is the subject property, faces both Marine Drive and Montrose Avenue, is fully enclosed by a cyclone fence and has no entrance or exit directly onto the public ways. It is covered with a hard surface composed of stone and cinders which have been rolled over. It is located in an R7 General Residence District.

On April 27, 1967, the Zoning Administrator served notice upon the plaintiff to discontinue the use of the parking lot because it was not improved with a macadam base and surfaced with asphaltic concrete or other comparable all weather dustless material, as required by the Chicago Zoning Ordinance; and on May 2, 1967, he entered an order finding that the lot was improperly surfaced.

The plaintiff appealed to the zoning board of appeals which, after conducting a full hearing, affirmed the decision of the zoning administrator and made the following findings: "* * * that in this case the appellant [plaintiff] provides off-street parking in excess of the requirements of an R7 District; that the public parking facilities provided by the applicant are in excess of the 25% allowed under Section 7.12 (1) of the zoning ordinance; and further, that the location of the parking lot in relationship to Lincoln Park and the surrounding residential neighborhood requires that the applicant comply with Section 7.12(8)b of the zoning ordinance * * *."

Section 7.12(8)b, which was added to the Chicago Zoning Ordinance in 1957 as a part of a comprehensive amendment, provides with reference to the surfacing of open air off-street parking facilities in residence districts as follows:

> "Off-street parking spaces accessory to uses allowed in Residence Districts shall be provided in accordance with the regulations set forth hereinafter as well as in Article 5, General Provisions, Sections 5.8—1 to 5.8—6.

(8) Design and Maintenance.

> b. Surfacing. All open off-street parking areas, except a single parking space accessory to a one family dwelling, shall be improved with a compacted macadam base, not less than four inches thick, surfaced with asphaltic concrete, or some comparable all-weather dustless material.

The plaintiff does not dispute the fact that the surface of its parking lot fails to conform with the requirements of section 7.12(8)b, however, it does contend that since its use of the property as a parking lot was lawfully established long before 1957, the property is not subject to section 7.12(8)b. It is argued that the parking lot as surfaced constitutes a non-conforming use.

At the hearing before the Zoning Board of Appeals, A. F. Jaworek, the secretary of Brunhild Towers, Inc., testified that the corporation purchased the parking lot in 1944 and that the lot prior to its acquisition had been used for the parking of cars owned by tenants of Brunhild Towers. He further stated that the general public had never been permitted to bring in cars for parking. In response to a question from

the chairman of the Board he clarified his statement concerning the exclusion of the general public from the lot, "What I mean by that is, nobody from the outside; they mostly are tenants or employees, or guests that are allowed to come in." It was then brought out that about 20 spaces were rented out at the rate of $15.00 per month each to persons not residing in the apartment building and that the corporation did not have a license to operate a public garage. It was not clear from the testimony whether the spaces were rented out both in the building and in the outdoor lot or just in the outdoor lot.

A use of land established prior to the comprehensive amendment which becomes non-conforming by reason of the passage of the amendment may continue with limitations not relevant here provided that the use is not changed to one which is prohibited in the district where the land is located. (See Chicago Zoning Ordinance, sections 6.2[1], 6.6[2], and 6.6—3[3].) The questions to be determined, therefore, are (1) whether plaintiff's use of the subject property was lawfully established prior to the adoption of the amendment and (2) whether that use continued unchanged.

When the subject property was purchased in 1944, it was located in an apartment house district. Apartment buildings with more than two units, in districts of this type, were required to have facilities for parking in a private garage or in an automobile compound for every third unit in the building.

(See section 8(2)[4] of the Chicago Zoning Ordinance.) An automobile compound was defined as "[a]ny land area located on the lot on which any residence is located, * * * used or intended to be used for the storage of the private passenger automobiles of the occupants of the

---

[1] "6.2 Any non-conforming use, building or structure which existed lawfully at the time of the adoption of this comprehensive amendment and which remains non-conforming, and any such use, building or structure which shall become non-conforming upon the adoption of this comprehensive amendment or of any subsequent amendments thereto, may be continued, some for specified and respective periods of time, subject to the regulations which follow."

[2] "6.6 The non-conforming used of land not involving a structure or building, or in connection with which any building or structure thereon is incidental or accessory to the principal use of the land, may be continued, * * *."

[3] "6.6—3 Change of Use. The non-conforming use of land shall not be changed to any other use except to a use permitted in the district in which the land is located."

[4] "SECTION 8. Apartment House districts. Permitted uses in Apartment House districts are:
(2) Apartment house, provided that where there are more than two apartments in the building a private garage or automobile compound for the storage of one passenger automobile for each of 33 per cent of the number of apartments shall be erected or established and maintained on the lot used for the apartment house; * * *."

residence * * *." See section 2 Chicago Zoning Ordinance.

When the comprehensive amendment was passed in 1957, the subject property was included in an R7 General Residence District. Apartment buildings in R7 Districts like apartment buildings in the former apartment house districts were required to provide parking facilities. These were to be used primarily by the occupants of the apartment building, but under section 7.12(1)[5] 25 per cent of the required spaces could be rented to persons not residing in the building.

Subsequent to 1957, the plaintiff rented parking spaces in the subject property to non-residents of Brunhild Towers, and at the time of the hearing before the Zoning Board of Appeals approximately 20 spaces were rented to outsiders on a monthly basis. This use of the subject property was unlawful (1) because the plaintiff did not have a license to operate a public garage and (2) because more spaces were rented to occupants of other buildings than was permitted in the zoning ordinance.

Section 156—15 of the Municipal Code of Chicago provides that "[n]o person shall engage in the business of a public garage without first having obtained a license therefor." A public garage is defined in section 156—13 as "* * * any building, structure, premises, enclosure, or other place except a public way, within the City, where two or more motor vehicles are stored, housed, or parked for hire, in a condition ready for use, or where rent or compensation is paid to the owner, manager, or lessee, of the premises for the housing, storing, sheltering, keeping, or maintaining of such motor vehicles." The plaintiff leased 20 spaces in its parking lots at the rate of $15.00 per month and collected approximately $300.00 each month. It did not have a license to operate a public garage, and it was therefore renting spaces in violation of section 156—15.

The plaintiff, in addition, as found by the Zoning Board of Appeals, was renting more spaces to the public than is permitted under the Zoning Ordinance. In R7 Residence districts owners of multiple family dwellings are required by section 7.12—3(2) to provide "parking spaces equal in number to 60 per cent of the number of dwelling units (exclusive of efficiency units) and 40 per cent of the number of efficiency units * * *"; and they may rent out to the public 25 per cent of the required

---

[5] "Except as may otherwise be provided for parking of trucks in the grantng of special uses, required accessory off-street parking facilities provided for uses listed herein shall be solely for the parking of passenger automobiles of patrons, occupants, or employees of such uses, provided that in an R4, R5, R6, R7, or R8 District, not more than 25 percent of the accessory parking spaces required for a dwelling, lodging house, or a hotel may be rented out on a monthly basis to occupants of other dwellings, lodging houses, or hotels."

spaces pursuant to section 7.12(1)[6]. The record shows that the plaintiff's apartment building contains 92 units, but it does not indicate whether any of those units are efficiencies. We shall assume the facts most favorable to the plaintiff and presume that none of the units are efficiencies. The number of parking spaces required for the building would be equal to 60 per cent of the number of units (60 per cent of 92) or 55. The number of spaces that could be rented out to the public on a monthly basis would be 25 per cent of the required spaces (25 per cent of 55) or 14. The plaintiff in renting 20 parking places on a monthly basis was thus renting more spaces than authorized in the Zoning Ordinance.

■■ Since the plaintiff (1) by operating a public garage without a license and (2) by leasing more spaces to the public than permitted in the Zoning Ordinance changed the use of the subject property it lost any right that it might have had to operate an improperly surfaced automobile compound as a non-conforming user. It is therefore subject to the surfacing requirements of Section 7.12(b)b. The evidence supports the finding of the Board of Zoning Appeals, and the findings justify the affirmance of the order and decision of the Zoning Administrator.

It is also argued that the issue of whether the plaintiff provided public parking facilities in excess of the requirements of the Ordinance was not properly raised before the Board of Zoning Appeals. The plaintiff's defense to the order of the Zoning Administrator was that the property as surfaced constituted a non-conforming use. Evidence that the subject property was being used as a public garage was relevant to the question of whether the plaintiff had established and maintained a non-conforming use, and such evidence was, therefore, properly admitted and considered by the Board of Zoning Appeals.

■■ The plaintiff further contends that Section 7.12(8)b is inapplicable to the parking lot which was constructed prior to 1957 because of section 5.8—1(1) which provides:

(1) For all buildings and structures erected and all uses of land established after the effective date of this comprehensive amendment, accessory parking and loading facilities shall be provided as required by the regulations of the districts in which such buildings or uses are located. However, where a building permit has been issued prior to the effective date of this comprehensive amendment, and provided that construction is begun within one year of such effective date and diligently prosecuted to completion, parking and loading facilities in the amounts required for issuance of said building permit may be provided in lieu of any different amounts required by this comprehensive amendment.

[6] See previous footnote No. 5.

It is argued that the effect of the first sentence of this Section is to limit the scope of the off-street parking and loading provisions of the Ordinance only to structures erected and uses established after the effective date of the comprehensive amendment. We are not persuaded by this argument because it is clear that the Section applies only to accessory parking and loading facilities for structures erected and uses of land established after the effective date of the comprehensive amendment.

■■ We must note that the surfacing requirements of section 7.12(8)b were included in the comprehensive amendment in part as a measure to control dust pollution and that a municipality has extensive power to pass ordinances for the health, safety, and welfare of the public which are applicable to existing structures and uses provided that the public welfare requires such application and that property owners do not suffer unreasonable exaction as contrasted with the resulting public benefit. See: *City of Chicago v. Miller*, 27 Ill.2d 211, 188 N.E.2d 694, (Ordinance imposing requirements with respect to the ventilation of kitchens, the sufficiency of sanitary facilities, the venting of certain plumbing fixtures, and the fire-resistant qualities of the walls, partitions, and doors held applicable to buildings built before the effective date of the ordinance), and *Abbate Bros. v. City of Chicago*, 11 Ill.2d 337, 142 N.E.2d 691 (Ordinance requiring the safety devices in all elevators held applicable to elevators installed and placed into operation before the passage of the ordinance.)

The parking lot in the instant case was covered only with rolled stone and cinders, and the Zoning Administration apparently considered that this surface was inadequate to insure the anti-pollution protection necessary in high density residential areas. The resurfacing of the plaintiff's lot will contribute in a small way to a lessening of the amount of pollution in the atmosphere.

For the reasons stated the judgment of the circuit court is reversed.

Judgment reversed.

ADESKO, P. J., and DIERINGER, J. concur.